Wardlaw, Ch.,
delivered the opinion of the Court.
Hannah Swinton, the testatrix, died in 1843. Her will, dated February 27, 1832, contains the following clauses : “ I give and bequeath twelve shares of the dividends of my five per cent, stock, of the State of South Carolina, unto my executors, in trust always nevertheless, that they shall pay over the interest on said stock to my slave named Minda, for and during the time of her natural life, quarterly, as they shall receive the same in equal shares; and at the death of my said slave Minda, the said five per cent, stock and dividends of the said State, shall go to the Sabbath School of the Circular Church, No. one; and I charge my executors to fulfil the foregoing bequest in favor of the said Sabbath School, and if it should not be incorporated, then, I do hereby make them trustees, if necessary, for that purpose ; and if the said Sabbath School should not exist at the time when the said legacy shall accrue, then, the said stock and dividends shall go to the Circular Church in Charleston, forever.” “ I desire that all the property, not specified in this my will, whatsoever, howsoever, and wheresoever it may be found, which I now hold, or hereafter I may hold, shall go to assist in educating the children of my deceased brother, James Swinton, until the youngest is twenty years old, then I desire that it shall go to 'my infant nephew, Hugh Ralph Swinton, to him and his heirs forever ; but in the case,” &c. The context, by the minute specification of her estate, and the careful mention of all persons, whom she supposed to have any claim upon her bounty, manifests the purpose of testatrix to dispose of her whole estate, and •not, as to any part of it, to die intestate.
*203 It is clear, too, from the will, that the plaintiff is a favorite legatee, for, in addition to several immediate bequests, he takes in remainder, in several instances, property given to others for life. There is, in the will, no other disposition of the residue, except that contained in the clause above recited.
The plaintiff states in his bill, that he is the youngest child of James Swinton, and is over the age when the residue was appointed to vest in him ; and he claims, that the legacy in trust for the slave Minda, is null and void by the 4th section of the Act of 1841 (11' Stat. 154,) and falls into the residue, to which he is entitled. The sum in controversy is small, consisting of the dividends of $1200, in the 5 per cents, of State stock, for the life-time of Minda, from the death of the testatrix, or the attainment of twenty years by the plaintiff, whichever was the posterior event.
The plaintiff in his bill made no parties defendants except the executors, and they, in their answer, operating to this extent as a demurrer, objected, that all the parties in interest were not parties to the suit. At February Term, 1850, Chancellor Dargan made the following order: “ On hearing the bill and answer in this cause, it is ordered, that the complainant have leave to amend his bill, by adding new parties thereto, as follows, to wit: the corporation of the Circular Church, the next of kin of the testatrix, Hannah Swinton, and Sabbath School No. 1, of the Circular Church, if the same should be incorporated, and if not incorporated, the said Sabbath School shall be represented by the parties defendants before the Court, as the trustees of the School, “being declared such by the will, in the event that the said school shall not be incorporated.” The plaintiff finding it inconvenient to comply with this order, as the next of kin were numerous and widely dispersed, brought the matter before Chancellor Dunkin, at June term, 1850, and moved to rescind so much of the former order as required the next of kin of testatrix to be made parties : and this motion was refused by the Chancellor.
The appeal is from this order and this refusal, on the ground, that the next of kin of testatrix are not necessary parties in this *204 suit The Chancellor on circuit at the last term, pursued the course required by principle and comity, in dismissing- a motion ,to modify the order of his predecessor, where no change of circumstances demanded a change of discretion. The motion was in the nature of an appeal, from one to another, of co-ordinate authority. But in this Court, we may deal with the whole matter, according to the doctrines and practice of equity. The general rule, as to parties in equity, is, that all persons having an interest in the object of the suit, ought to be made parties. The reasons of the rule are, that the Court may completely determine the rights of all persons interested, — that future litigation may be prevented, — and that the orders of the Court may be safely executed by those upon whom they operate. Departures from the general rule are sometimes allowed by the discretion of the Court. As in a suit which affects the personal estate, the legatees may not be necessary parties, although having interest in the object of suit, inasmuch as they are represented in the person of the executor, or administrator, and their rights thus sufficiently protected. So, where the next of kin are proper parties, it is not indispensable that all of them should be expressly brought in, for if one or more of them be named as parties, all may attend the accounting before the master, and be heard by counsel in the Court. (Calvert, 11, 20, 51; Sp. Eq. 430.)
Whether, in this case, the next of kin of testatrix have an interest in the object of the suit, depends upon the subordinate questions, whether the plaintiff is constituted, by the terms of the will, general legatee of the residue ; and whether the legacy in trust for a slave falls into the residue.
That a gift of the residue may have a limited operation, is unquestionable, where the words of the will and the manifest intention of the testator require such construction. Even general words sufficiently broad to cover the whole, may be confined in their operation by connection with other parts of the will. In Attorney General vs. Johnstone, (Amb. 577,) Lord Camden held that, where testator had expressed doubt if there would be any residue, and then mentioned it as a small remainder of about £100, *205 the gift of the residue did not include lapsed legacies amounting to £20,000. So, in Daveis vs. Dewes, (3 P. Wms., 40,) testator gave Cheevely House to his wife for life, declaring that he would dispose of the goods and furniture, in Cheevely House, after his wife’s death, by a codicil to his will; and then bequeathed to his wife the residue of his personal estate, whatsoever, not before disposed of, or reserved to be disposed of by his codicil; and afterwards made two codicils without disposing of his said goods and furniture : Lord King held, that the testator had not given to his wife all the property which he had not disposed of by his will, or which he might not dispose of by his codicil, but expressly excepted, out of the residuary bequest, the property reserved to be disposed of by his codicil; that the goods and furniture, so expressly excepted and reserved, did not pass to the wife. In commenting upon these two cases, in Bland vs. Lamb, (2 Jac. & W. 405,) Lord Eldon speaks of them as deciding, that the words employed described only the actual surplus of what the testators had at the dates of their wills, and, while admitting that such construction may be adopted, where the intention is clear, discredits some of the opinions expressed in these cases. In our own case of Peay & Picket vs. Barber, (1 Hill Ch. 97,) general words of residuary bequest were restricted to particular classes of property upon the construction of the whole instrument. Judge Johnson there properly insists on the fact, that our law distributes undevised residue among the next of kin, whereas in England it goes to the executor, as justifying Courts, here, in following more closely the intention of testators to restrict the residue than the policy of England would warrant. Still in that case, as in all our cases on the subject, the general doctrine is recognized, that the words of a residuary clause operate upon all the property of the testator, at the time of his death, within the scope of the words. The ambulatory character of a testament is not to be restrained by construction in doubtful cases. See Garrett vs. Garrett, (2 Strob. Eq. 292,) correcting some expressions, apparently of contrary tendency, in the same case, as reported 1 Strob. 99. This general doctrine is *206 founded upon such artificial reasoning as this: when one bequeaths all his property, he shows that he did not mean to die intestate as to any part; not meaning to die intestate as to what he had at the time of making his will, he does not mean to die intestate as to what he should have at the time of his death; he gives property away from the residuary legatee, only for the sake of the particular legatee, and as against all others, the residuary legatee is presumed to be the object of testator’s bounty. The application of the doctrine does not depend upon any express or particular intention of the testator, for it may be well argued in all cases, that a testator, having no prescience, contemplates only the state of his property existing at the date of his will: and that, by a gift of the residue, he means only a gift of his actual property left out of other dispositions. Still, the residuary legatee takes every thing not effectually given to others, of the whole property at the death of the testator, however great may be the hardship of particular cases. (Bland vs. Lamb, 5 Mad. 4122 Jac. & W. 405; Cambridge vs. Rous, 8 Ves. 25; Leake vs. Robinson, 2 Mer. 392.) In the case before us, it is argued, that the words, “ not specified in this, my will,” except from the gift of “ all the property, whatsoever, howsoever, and wheresoever it it may be found, which I now hold, or hereafter I may hold,” all the property in any wise mentioned in the will. But these words, “ not specified in this my will,” mean no more than not bequeathed; i. e. not effectually bequeathed. They add no limitation to the term, rest, or residue, which standing by itself strictly means, although very different effect is given to it, that only which is not otherwise disposed of, or mentioned. Clowes vs. Clowes, 9 Sim. 403, (16 Eng. Ch. R. 404,) is an express authority. There the testator had given to two nieces for life £20 and £30 a year out of the interest of certain stock, and the question was, whether the capital of the sums so given passed to the widow, under this bequest; “ I bequeath all my household furniture, and all my property of every kind not specified above to my dear wife :” V. C. Shadwell held, that testator meant by “ all my property not specified above,” interest not *207 bequeathed in property which he might have before mentioned, and that the widow was entitled to the capital. In Roberts vs. Cooke, (16 Ves. 451,) a residuary bequest of personal property, “not hereinbefore specifically disposed of,” was construed to comprehend lapsed legacies. The plaintiff, then, must be considered general legatee of the residue.
In the first three sections of the Act of 1841, gifts and trusts, providing or intended for the emancipation of slaves, are declared not only to be void, but to enure to the benefit of the next of kin ; but the 4th section, which is the only one that speaks of gifts to slaves, says nothing about the next of kin: and. while, in terms too plain for disputed construction, it declares every bequest in trust for the benefit of any slave to be void, it leaves the consequences to be determined by the general law. If it be true that void legacies fall into the residue, the plaintiff is entitled to the bequest in trust for Minda ; and this general proposition is clearly settled by the cases. Lord Hardwick says, in Durour vs. Motteaux, (1 Ves. sen. 321,) turning upon the mortmain Act; “ a will is made in which several legacies, and the residue of the personal estate, are given away; one of the personal legacies is void by law ; the Court cannot say for that reason, contrary to the express will, that testator intended to die intestate: for giving the residue over includes every thing, let it fall in by reason of that legacy’s being void, or lapsing, by dying in the life of the testator.” See Shanley vs. Baker, (4 Ves. 732.) In Kennell vs. Abbott, (4 Ves. 802,) a legacy given by a woman to her supposed husband, who was not her husband, and therefore void, was decreed to the residuary legatee. In Leake vs. Robinson, where the legacy was void for the remoteness of the limitation, Sir Wm. Grant says: “ It must be a very peculiar case in which there can be at once a residuary clause and a partial intestacy, unless some part of the residue be ill-given. It is immaterial how it happens, that any part of the property is un-disposed of, whether by the death of a legatee, or by the remoteness and consequent illegality of the bequest. Either way it is a residue : i. e. something upon which no other provision of the *208 will effectually operates. It may in words have been before given ; but if not effectually given, it is, legally speaking, undis-posed ^of, and consequently included in the denomination of residue.” In Bauskett vs. Breithaupt, (1 Rich. Eq. 471, Chancellor Harper, discussing the consequence of a legacy void under the Bastardy Act of 1789, says : “ it is hardly necessary to refer to authority for a doctrine so well established, as that a general residuary clause will pass everything that is not effectually disposed : if a legacy lapses, or is void, it will go to the residuary legatee.”
It does not seem to us, that the next of kin of Hannah Swin-ton have any such interest, as requires them to be parties to this suit; and it is ordered and decreed that so much of the order of February, 1850, as requires them to be made parties, be rescinded.
JohNston, DunkiN and DargaN, CC., concurred.

Motion granted.